Webber v. Stover.

DAVID WEBBER and others, in equity,

*vs.*

LEMUEL H. STOVER and others.

*School district, division of. R. S. of 1857, c. 11, § 1.*

At a town meeting holden in Harpswell, October 2, 1865, a majority of the selectmen and of the superintending school committee, made a report recommending the division of an old school district, and the creation of two new ones from it, which report was then accepted by the town, and recorded upon its records, and the original placed on file. This proceeding was nugatory, because the R. S. of 1857, c. 11, § 1, then in force, (identical in this respect with the same chapter and section of the present revision) required such report to be made "at the annual meeting" of the town. But at the next annual meeting, holden in March, 1866, under an appropriate article in the warrant calling the same, after hearing the record of the report read by the town clerk, the town voted to accept the report and to divide the district agreeably to its recommendation; *held,* that the two new districts were legally constituted out of the old one, and that the action had was equivalent to a report made directly to this last meeting, at which this vote was passed.

Also, *held,* that, under the circumstances of this case, a recital in the report (substantially) that although a division of the district would not be desirable if its inhabitants could agree among themselves to forego it, yet the state of feeling actually existing was such as to require the division, was a sufficient "statement of facts" under R. S., c. 11, § 1, upon which to base the action of the town.

Webber *v.* Stover.

BILL IN EQUITY.

This bill of complaint was brought under the Public Laws of 1864, c. 239, § 1, by ten taxable inhabitants of the old school district No. 5 in Harpswell, which they claimed still existed as originally established, against the three defendants, selectmen of the town, alleging that these officers should have apportioned a due proportion of the school money of the town to this district, but that they refused to do so upon the ground that it had been legally divided into two new districts, to which they assigned the money, declining to recognize the existence of the old school district, No. 5. To prevent this diversion of the funds and to compel their application to the uses and purposes of this district, these proceedings were instituted. The main question at issue was the legality and efficacy of the alleged division, which the defendants set up in their answer as made by the town, upon regular petitions therefor, hearing had, and a written report and recommendation of a majority of the municipal officers and of the superintending school committee, duly presented and accepted at a meeting of the town held October 2, 1865, and also presented, read and accepted at the annual town meeting, held March 5, 1866, when it was voted to divide school district No. 5 at the limits recommended by the selectmen and superintending school committee.

It was agreed that this case should be heard on the Bill and Answer, modified by the following statements, so far as the facts therein stated were legally admissible in evidence.

At a meeting of the inhabitants of Harpswell, legally called and notified, held on the second day of October, A. D., 1865, the warrant contained (among others) the following article:

"To hear and act on the report of the selectmen and superintending school committee, concerning school district No. 5."

Upon said article it was voted: To accept the report of superintending school committee and selectmen concerning school district No. 5, which is as follows: "The selectmen and superintending school committee, in accordance with the petition of Arthur B. Webber and others, and also the petition of George W. Curtis

and others, asking for a division of school district No. 5, in the town of Harpswell, have notified the inhabitants of said district, and given them a hearing concerning the proposed division, and beg leave to submit the following report :

"Your selectmen and superintending school committee are of the opinion that under ordinary circumstances, if the inhabitants of the district could agree to forego a division of the said district, it would be to their advantage so to do (as we have before recommended), but considering the present state of feeling, engendered by existing circumstances, we are of the opinion that the peace and harmony of the district, and, consequently, the interests of education, would be better promoted by a division of the district; we therefore recommend that district No. 5 be divided on the line fence between the land of Norton Stover and land of Elijah Pinkham, commencing at the interval, (so called) and running in a north-western direction to the north-western limits of the said Elijah Pinkham's land, and thence continuing the said north-west course to the shore at Ash Cove (so called.)

HARPSWELL, September 30, 1865.

L. H STOVER,  ⎱ Selectmen and Superintending
WM. C. EATON, ⎰      School Committee."

Voted: That the north part retain the old organization and name of No. 5.   Voted : That the south part be called No. 18.

At the annual meeting in March, 1866, legally called and notified, the warrant contained (among others) the following articles :

"To see if the town will vote to divide district No. 5 at the limits recommended by the selectmen and superintending school committee, September 30, 1865, agreeable to the petition of Paul Stover and others, and to hear the remonstrance of David Webber and others, against the same."

Under this article the following vote was adopted: Voted: To accept the report of the selectmen and superintending school committee in regard to division of school district No. 5, at the limits recommended by the selectmen and superintending school committee as reported September 30, 1865, agreeable to petition of

Paul Stover and others. Recorded in doings of meeting Oct. 2, A. D., 1865.

The action at the meeting in October was founded upon a petition and proper preliminary proceedings.

It was agreed that at the March meeting, the selectmen and superintending school committee being the same, before the town acted upon the article, and while it was pending, the clerk read from the record of the October meeting the report of the selectmen and superintending school committee, as recited in the vote above copied, and which was on the files of said town. It was agreed, also, that said L. H. Stover, W. C. Eaton and one other, were legally elected selectmen and superintending school committee at the meeting in March, 1865.

It was agreed that if said original district, No. 5, was legally divided by the proceedings aforesaid, this bill was to be dismissed with costs.

*J. H. Drummond,* for the complainants.

The action of the meeting of October 2, 1865, is clearly void. R. S., c. 11, § 1; that of the annual meeting, March 5, 1866, was equally so, because there was no "written recommendation of the municipal officers and superintending school committee, accompanied by a statement of facts," as required by that section. *Allen v. Archer,* 49 Maine, 346. At this last meeting these officers presented no report, nor does it appear they were present; but the clerk read from his record a copy of a report that had been made to the previous meeting, which was then accepted, acted upon, and became *functus officio.* The statute contemplates a recommendation contemporaneous with the action of the town, and a statement of the facts then existing. The report should be made for that time and at that time; this report, dated September 30, 1865, speaks of "the present state of feeling, engendered by existing circumstances," i. e., at its date, but both might have been changed before March, 1866. All these officers should sign the report to make it effectual.

The destruction of the original papers by the great fire of July 4, 1866, has delayed the presentation of this cause.

*A. A. Strout,* for the defendants.

The teachers in these districts should have been joined as defendants. The proceedings of the town were correct in substance, and that is enough. *Soper v. Livermore,* 28 Maine, 203. Prior to March, 1866, the report had no function to perform, and could not, therefore, be *functus officio.* Having been presented, and not afterwards amended or withdrawn, it continued to be the recommendation and report of these officers, and the proper basis of the town's action.

VIRGIN, J. Sometime prior to September 30, 1865, the municipal officers and superintending school committee of the town of Harpswell, recommended a non-division of school district No. 5. The district did not concur, but still sought a division. Thereupon, after a hearing upon the petition of certain inhabitants of the district, L. H. Stover and W. C. Eaton, each holding the respective offices of selectmen and superintending school committee, on September 30, 1865, made a written report, therein stating it to be their opinion—"that under ordinary circumstances, if the inhabitants of the district could agree to forego a division of the said district, it would be to their advantage so to do (as they have before recommended); but considering the present state of feelings, engendered by existing circumstances, they are of opinion that the peace and harmony of the district, and consequently the interests of education, would be promoted by a division of the district; and they therefore recommend that district No. 5, be divided on the line fence," &c.,—designating a territorial line of division.

This report was submitted to the inhabitants of the town at a meeting thereof, held October 2, 1865, when it was accepted by a vote of the town, and recorded *in extenso* as a part of the vote of acceptance, and the paper itself was placed upon the files of the town. This action of the town was without the authority of law.

R. S. of 1857, c. 11, § 1, then in force, provided that "school

districts shall remain as they are until altered or discontinued. A town, at its annual meeting, may determine the number and limits of school districts therein; but they shall not be altered, discontinued, or annexed to others, except on the written recommendation of the municipal officers and superintending school committee, accompanied by a statement of facts," &c. But the words "annual meeting" when applied to towns, mean the annual meeting for choice of town officers. R. S. of 1857, c. 1, § 4, cl. IV. And the annual town meetings for the choice of town officers, "shall be held in the month of March." R. S. of 1857, c. 3, § 10. Hence the town could not determine the limits of any school district therein at the October meeting, 1865.

At the succeeding annual meeting held in March, 1866, under an article—"To see if the town will vote to divide district No. 5, at the limits recommended by the selectmen and superintending school committee, September 30, 1865," &c., and before final action of the town upon the article, but while it was pending, the clerk read from the record of the October meeting the report of the municipal officers and superintending school committee, as recited in the vote of acceptance as hereinbefore stated; and thereupon the town "voted to accept the report," &c.

I. Is the recommendation of the town officers accompanied by such "a statement of facts" as is contemplated by the statute?

A statement of facts, whatever that phrase means, is expressly required as a pre-requisite condition to any change in the limits of a district. This condition is designed to prevent changes without sufficient cause; and when no statement of facts whatever is made by the proper officers (as was the case in *Allen v. Archer*, 49 Maine, 346) any alterations, however considerately made, or however wise and satisfactory they may prove to the inhabitants interested, must be deemed unauthorized and void.

A statement of facts in this class of cases and those analogous thereto, would seem to be a mere recital of the principal material facts upon which the recommendation is based. As already seen, this is a chronic strife. It seems that the same officers had previ-

ously recommended different action, which did not prove satisfactory, or allay the strife. But upon a rehearing, after witnessing the state of feeling engendered by the circumstances, and the uncompromising spirit of the persons seeking a division, they saw no other mode of bringing about peace and harmony to the inhabitants of the district, and of promoting the interests of education, than by a division of the district on the line designated and for the reasons stated; and the town concurred. If it is somewhat informal, and general, and even if the facts are somewhat peculiar, it is only such an irregularity as the courts have frequent occasion to observe when investigating the proceedings of our municipal corporations. If the law had lodged in us the authority to pass upon the wisdom of the proposed division, in the absence of any other information than that contained in the statement, we might desire a more detailed recital of the facts. But the statute submits the wisdom of the proceeding to the town alone, to which the details must necessarily be more or less familiar. The law requires of the court to give a liberal construction to such proceedings, and to uphold them, when, as we think in this case, they are in substantial compliance with the requirements of the statute.

II. It is contended, however, that the report comprising the recommendation and accompanying statement of facts, having been made to and accepted by the meeting of October 2, 1865, thereby became *functus officio*. We fail to perceive the force of this objection. The town had no authority to act then upon the subject matter of the recommendation, because, as already seen, it was not the "annual meeting." The town's action then, was without effect and void. But the report was placed on file. And at the succeeding annual meeting, when the matter could be lawfully considered and effectually decided, the town, under a proper article, did act. Instead of either of its authors taking it from the file and reading it for the information of the town, its contents were just as effectually made known by the clerk's reading a copy of it from the record. And the fact that it had been made and signed six months before final action by the town, could weigh nothing, provided the facts

therein recited remained unchanged, and we have received no suggestion that they did not. No statute limitation is violated. If the facts and opinions of the municipal officers and superintending school committee had changed, the report of the case would have shown it. What would have been the effect if·the officers had submitted another and different recommendation and statement, need not now be discussed.

III. R. S. of 1857, c. 1, § 4, cl. III, removes all doubt as to the validity of the written recommendation and accompanying statement of facts, so far as the fact is concerned that it was signed by two only of the proper officers, without its appearing that the other acted.

The conclusion to which we have come renders a consideration of the preliminary question unnecessary.

*Bill dismissed, with costs for respondents.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS and DANFORTH, JJ., concurred.